# EXHIBIT M

STATE OF ILLINOIS )
) ss
COUNTY OF COOK )

FILE NO(S) <u>2005CA2864</u>

## AFFIDAVIT OF SERVICE

William T. Smythe, being first duly sworn, on oath states that he served a copy of the attached **NOTICE OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE** on each person named below by depositing same this 29th day of March, 2006, in the U.S. Mail Box at 100 West Randolph Street, Chicago, Illinois 60601, properly posted for FIRST CLASS MAIL, addresses as follows:

---

Mr. Carl R. Menefee
3517 Birchwood Drive
Hazel Crest, IL  60429

Ms. Barbara A. Woodman
Director, Human Resources
Dynamic Educational Systems, Inc.
8433 North Black Canyon Hwy,  Suite 200
Phoenix, AZ  85021

_William T. Smythe_ (signed)
William T. Smythe

SUBSCRIBED and SWORN to before me this 29th day of March, 2006.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
GLORIA J. POLK
Notary Public, State of Illinois
My Commission Expires 02/15/2010

**PLEASE NOTE:**

The above-signed persons are responsible only for <u>mailing</u> these documents.  If you wish a review of the findings in this case you must complete the Request for Review form attached.  Department staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

| | |
|---|---|
| IN THE MATTER OF: )<br>)<br>CARL R. MENEFEE, )<br>)<br>COMPLAINANT, )<br>)<br>AND )<br>)<br>DYNAMIC EDUCATIONAL SYSTEMS, INC., )<br>)<br>RESPONDENT. ) | CHARGE NO.  2005CA2864<br>EEOC NO.   21BA51640 |

## NOTICE OF DISMISSAL
## FOR LACK OF SUBSTANTIAL EVIDENCE

Mr. Carl R. Menefee
3517 Birchwood Drive
Hazel Crest, IL  60429

Ms. Barbara A. Woodman
Director, Human Resources
Dynamic Educational Systems, Inc.
8433 North Black Canyon Hwy, Suite 200
Phoenix, AZ  85021

DATE:  March 29, 2006

REQUEST FOR REVIEW FILING DEADLINE DATE:  May 3, 2006

1.    YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is NOT substantial evidence to support the allegations of the charge(s). Accordingly, pursuant to Section 7A-102(D) of the Human Rights Act (775 ILCS 5/1-101 et. seq.) and its Rules and Regulations (56 Ill. Adm. Code. Chapter II, Section 2520.810), the charge is HEREBY DISMISSED.

2.    If Complainant disagrees with this action, Complainant may seek review of this dismissal before the CHIEF LEGAL COUNSEL (CLC), Illinois Department of Human Rights, 100 West Randolph Street, Suite 10-100, Chicago, Illinois, 60601, by filing a "Request for Review" with the CLC within thirty (30) days after receipt of this Notice, by the request for review filing date above. Respondent will be notified by the CLC if a Request for Review is filed.

(continued on page two)

**NOTICE OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE**
March 29, 2006
Page Two

3.   If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC).  If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal.  (<u>Charges filed under the Americans with Disabilities Act of 1990 are automatically given this review.</u>)  Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Chief Legal Counsel, within fifteen days of the Chief Legal Counsel's final order.  Any request filed prior to your receipt of a final notice WILL NOT BE HONORED.  Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2800, Chicago, Illinois  60661. Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPPOINTMENT IS REQUIRED, CALL 312-353-2713 OR 1-800-669-4000.

                                        DEPARTMENT OF HUMAN RIGHTS

NOD/LSE
12/01

# STATE OF ILLINOIS
# DEPARTMENT OF HUMAN RIGHTS
# INVESTIGATION REPORT

DHR NO.: 2005CA2864                                EEOC NO.: 21BA51640

COMPLAINANT                                        RESPONDENT
Carl R. Menefee                                    Dynamic Educational Systems, Inc.

I.  **Issue/Basis**                                II. **Finding**

    A.  Failure to Hire/Race, Black                    A.  Lack of Substantial Evidence

    B.  Failure to Hire/Sex, Male                      B.  Lack of Substantial Evidence

    C.  Failure to Hire/Age, 50                        C.  Lack of Substantial Evidence

III.  Emily Kroker    /              /        PCW 3/27/06

IV. **Jurisdiction**

    Alleged violations:          December 10, 2004

    Charge filed:                March 24, 2005

    Perfected date:              March 24, 2005

    Amendments:                  N/A

    Number of employees:         51

V.  **Uncontested facts**

    A.  Respondent provides training to help people obtain employment through job placement.

    B.  Respondent placed an ad for an accountant position on November 22, 2004.

    C.  Complainant applied for the position by sending his cover letter and resume through the Career Builder website on December 1, 2004.

    D.  Complainant was interviewed over the telephone by Chris Herro, Director of Finance on December 2, 2004.

Charge No. 2005CA2864
Page 2

    E.    Complainant was interviewed in-person by D.E. Simmons, Respondent's Former General Manager on December 10, 2004.

    F.    Complainant was not hired into the accountant vacancy.

VI. **Employment data**

According to information provided (Exhibit A), Respondent has 51 employees, 29 (57%) of which are over the age of 40. According to Respondent's EEO-1 Reports (Group Exhibit J), they have 22 (43%) black employees and 13 (25%) male employees.

VII. **Allegation A:** Failure to Hire/Race, Black

    A.    <u>Prima facie allegations</u>

        1.    Complainant's race is black.

        2.    Complainant was qualified and applied for Respondent's vacancy for an Accountant's position.

        3.    On or about December 10, 2004, Complainant experienced a failure to hire from D.E. Simmons, Respondent's General Manager.

        4.    Complainant believes that another, similarly situated, non-black applicant, with less qualifications and experience has been hired for the accountant's vacancy.

    B.    <u>Defenses</u>

        1.  Respondent's position is that they hired an applicant who had a more successful interview than Complainant and whose qualifications were superior to Complainant's.

        2.  Kathy Pedersen (white, female, 49), Human Resources Generalist, stated that Respondent received approximately 100 resumes in response to the advertisement for the accountant position. Pedersen stated that Human Resources screened the resumes, looking for applicants who met the guidelines outlined by the ad. Pedersen stated that Complainant responded to the online posting for the position and sent his resume to Respondent over the Internet. Pedersen stated that they sought gaps in employment, over-qualification and a downward trend in positions during the initial screening process. Pedersen stated that the remaining resumes were then forwarded to Chris Herro (white, male, 46), Director of Finance, for further evaluation, as he knew more about the specific requirements of the position.

A job advertisement for the accountant position (Exhibit C) indicates that Respondent sought an accountant for the Chicago office. It indicates that the individual must have a solid work history in accounting and finance, a 4-year degree, strong communication and analytical skills and 2 plus year experience working in Internal Audit or with government agencies preferred. It indicates that supervisory and budget preparation/variance analysis experience was a plus.

3. Herro stated that he reviewed the resumes further and selected candidates who, according to their resumes, met the qualifications of the position. Herro stated that he conducted phone interviews with five of the applicants, Dan Young (white, male, age unknown), Art Aberman (white, male, age unknown), Melissa Giroux (white, female, age 25), Bonnie Boron (race unknown, female, age unknown) and Complainant. Herro stated that he interviewed Complainant over the telephone on December 2, 2004. Herro stated that Complainant seemed flustered during the interview and Herro did not believe his communication skills were very good. Herro stated that following the phone interviews, he passed on the recommendations to D.E. Simmons (black, male, 50), General Manager, for further review and an additional interview. Herro stated that Respondent had no record of Complainant being interviewed by Simmons, as no employment application was completed.

E-mails dated December 3, 2004 (Group Exhibit H) indicate that Herro forwarded Young's resume to Simmons. They indicate that Herro believed that Young was a good candidate who should be interviewed for the position. They indicate that Herro also forwarded Aberman, Giroux and Complainant's resumes to Simmons. They indicate that Herro believed that all may be good candidates for the position and each had individual strengths. They indicate that Herro believed Aberman to be the strongest of the three candidates because of his "entrepreneurial energy/awareness and self initiative." They indicate that Herro believed that Giroux was "bright and she probably has the most 'upside' of the four candidates." They indicate that Herro believed that Giroux would be the most receptive to following Respondent's lead and following directions explicitly. They indicate that Herro believed that Complainant was the least strongest candidate of the four, "but his long tenure working for the City of Chicago is hard to ignore." They indicate that Herro noted that Complainant had an advanced degree, but his verbal communication skills were not as good as the other three.

4. Simmons stated that he conducted in-person interviews with Young, Aberman and Giroux on December 9, 2004. Simmons stated that he interviewed Complainant on December 10, 2004. Simmons stated that Complainant did not present himself well during the interview. Simmons stated that Complainant was not as professionally dressed as he expects during an interview. Simmons stated that Complainant was not prepared and talked

over him throughout the interview. Simmons stated that Complainant cut him off while he explained the position and did not appear to be listening to what he was saying. Simmons stated that he was also concerned about Complainant's description of how he left his last position. Simmons stated that he was concerned about Complainant's stability to remain in the position, as it appeared as though he left his former position abruptly. Simmons stated that when considering a candidate he has to take into account their ability to fit with the company and interact with the other employees successfully. Simmons stated that he did not believe that he could work successfully with Complainant after Complainant interrupted him during the initial interview. Simmons stated that the hiring decision was his and based on the interview with Complainant, he chose not to hire him into the accountant position.

5. Simmons stated that after all of the candidates were interviewed, he decided to hire Melissa Giroux. Simmons stated that he forwarded the information to Mark Douglas (race unknown, male, age unknown) for final approval. Simmons stated that Giroux was very prepared for the interview and handled herself in a professional manner. Simmons stated that her qualifications were similar to those of Complainant, and the decision to hire was ultimately based on what occurred during the interview.

Resume and interview notes for Melissa Giroux (Group Exhibit F) indicate that Giroux was employed as a supervisor of accounting services from January 2004 through December 2004. They indicate that Giroux supervised accounts payable and payroll departments. They indicate that she was employed in the finance associate development program from June 2002 through January 2004, as an internal auditor and a financial analyst.

A Pre-Hire Approval Form for Giroux dated December 15, 2004 (Exhibit I) indicates that Simmons wrote that Giroux's background was well suited for Respondent's fiscal needs. It indicates that Simmons wrote that Giroux would represent Respondent well. It indicates that Giroux operated audits at a division level, wrote work instructions for monthly reports, and did financial analysis projects.

6. Herro stated that Giroux's background was more progressive than Complainant's. Herro stated that while Complainant had worked consistently, he had not moved up in the companies he worked for. Herro stated that Complainant's internal audit experience was not as strong as Giroux's and Complainant did not have any supervisory experience. Herro stated that Giroux maintained more budget experience than Complainant and her auditing assignments covered a broader scope of operations. Herro stated that Giroux had excellent communication skills, was coming from a big company comparable to that of Respondent's size and had supervised other individuals during her work history. Herro stated that Giroux continues to be employed at Respondent and has done a consistently terrific job.